2021 IL App (1st) 180937
No. 1-18-0937
Opinion filed December 22, 2021

THIRD DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15 CR 8325 |
| CALEB TRIMBLE, | ) ) | The Honorable Joseph Cataldo, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant Caleb Trimble pled guilty to possession of child pornography and was sentenced to 30 months of probation. At sentencing, he was admonished, among other things, that he was required to register for life as a sex offender. Presently, he appeals his criminal conviction raising one issue: that the requirements particular to sex offenders, such as registration, constitute punishment and are unconstitutional as applied to him.

¶ 2        Just a few days before defendant filed his appellate brief with this court, the Illinois Supreme Court decided *People v. Bingham*, 2018 IL 122008, in which it found that challenges

to sex-offender requirements must be raised in a separate civil proceeding and may not be raised in an appeal from a defendant's criminal case.

¶ 3     The State subsequently filed its brief arguing that *Bingham* was not mentioned in defendant's opening brief and that *Bingham* required the dismissal of defendant's criminal appeal. Defendant has not filed a reply brief. For the reasons explained below, we have no choice but to dismiss this criminal appeal.

¶ 4                                    BACKGROUND

¶ 5     Defendant pled guilty on March 15, 2018, to one count of possession of child pornography and was sentenced on the same day pursuant to an agreement with the State to 30 months of probation.

¶ 6     At the plea hearing, the State read into the record the following stipulated facts:

"Your Honor, if this case proceeded to trial, it would be stipulated by and between the parties that the evidence would show the following:

In September 2014, the Schaumberg Police Department received cyber tips from the National Center for Missing and Exploited Children alleging possession of child pornography by Instagram account holder, Caleb Trimble.

The report indicated that the uploads occurred between April 1, 2014[,] by login IP address ***.

The associated e-mail address was ***. The Schaumburg Police, using the associated e-mail address, name and IP address included in the National Center for Missing and Exploited Children reports[,] conducted several public searches.

The results of those searches led to a link of a [F]acebook account linked to Caleb Trimble who would be identified in open court. Caleb Trimble was attending [college] and resided at [a certain street address] in Schaumburg, Cook County, Illinois.

A preservation letter was sent to Instagram and [F]acebook regarding the accounts of defendant, Caleb Trimble. A grand jury investigation was initiated resulting in the link of the IP address and the cybertips to the [defendant's street address] in Schaumburg. Investigation further revealed a second IP address of *** which was linked to a [D]ropbox account which was also located at the address *** in Schaumburg which contained images of child pornography.

Instagram records were obtained and authenticated the cybertips received by the Schaumburg Police Department. Photos of child pornography which were digital images of children which reasonably should have been known to be under the age of 13[,] where such child was actually or by simulation engaged in any act of sexual penetration or sexual conduct with any person[,] were found to be unloaded to Instagram account of defendant Caleb Trimble with an e-mail address of [omitted] with screen name of [omitted] and an email address of [omitted] with screen name of [omitted].

An investigation into the [D]ropbox account linked to the location of [defendant's street address] in Schaumburg, revealed images of children under the age of 13 where such child was actually or by simulation engaged in an act of sexual penetration or sexual conduct with a person.

On April 29, 2015, Detectives Quane *** and McIntyre *** of the Schaumburg Police Department met with the defendant, Caleb Trimble, who agreed to speak with them in regards to this investigation. Caleb Trimble was 21 years old on this date.

The defendant admitted to using the Instagram account to download images of child pornography. He admitted that he mainly viewed child pornography through an on-line application called [D]ropbox.

He admitted that no one else uses his computer or cell phone. He admitted to saving between 100 to 500 images of young girls having sex with adult men, placing objects in their vagina and posing naked.

He admitted to saving the images and placing them in a [W]ord document so that others could not readily find it. He admitted that only his computer has access to the [D]ropbox account. He admitted that he looks at these images of young girls between 8 to 15 years old so he could masturbate.

He admitted that the youngest female he recalled masturbating to was 2 or 3 years old. He admitted that no one else has access to his Macbook or cell phone which he said are password protected.

A search warrant was executed a the [defendant's street address], and the defendant's Macbook laptop and cell phone were recovered. An initial analysis of the Macbook revealed five videos in a folder marked [']movies['] which were videos of child pornography.

Analysis of the cell phone revealed hundreds of pictures of child pornography which captured images of boys and girls under the age of 13 engaged in various sex

acts including acts of sexual penetration or sexual conduct with adults, children, objects and animals. Photographs possessed by the defendant include:

An image of an infant bound at the wrist and ankles with a penis inserted in her vagina; a photo of a naked toddler bound and gagged *** and an arrow pointing to her vagina; a photo of [a] young girl approximately 5 years of age with a penis inserted in her mouth; [a] photo of a girl under 10 years of age *** and two exposed adult male penises.

There would be further stipulation that the defendant was 18 years of age or older and that all events occurred in Cook County."

After the State read the above stipulated facts into the record, defense counsel stated: "So stipulated, your Honor."

¶ 7 Defense counsel stated: "While in agreement with this, Judge, we do believe that this natural life sex offender registration is unconstitutional but we are proceeding." When the trial court questioned counsel about this statement, counsel explained: "There's no argument that what he's pleading to is unconstitutional. It's the automatic effect of the plea which is the sex offender registration statute. By law, of course, by operation of law." Defendant pled guilty, and the court accepted the plea.

¶ 8 The trial court sentenced defendant stating:

"I respect all the attorneys involved, so I will go along with the agreement: 30 months sex offender probation, $10,000 fine, defendant will be required to file as a sex offender for natural life, submit to DNA indexing, pay any mandatory fines and costs."

¶ 9 On April 13, 2018, defendant filed a motion to reconsider a condition of his probation, namely, that he refrain from contact with minors. On April 23, 2018, the trial court denied his

motion to reconsider, and defendant filed a timely notice of appeal on April 30, 2018. This appeal followed.

¶ 10                                                    ANALYSIS

¶ 11            On October 19, 2018, defendant filed an appellate brief arguing that requirements particular to sex offenders, such as registration, community notification, and restrictions on movement and employment, constitute punishment and are unconstitutional as applied to him. Defendant argues that these requirements are unconstitutional because they are grossly disproportionate to the severity of his crime and thereby violate both the eighth amendment of the United States Constitution (U.S. Const., amend VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11).

¶ 12            On September 20, 2018, the Illinois Supreme Court decided *Bingham*, 2018 IL 122008, finding that challenges to these requirements must be raised in a separate civil proceeding and may not be raised in an appeal from a defendant's criminal case.

¶ 13            The defendant in *Bingham* argued, as does defendant in our case, that the requirements particular to sex offenders, such as registration, are unconstitutional as applied to him. *Bingham*, 2018 IL 122008, ¶ 2. In response, the State in *Bingham* argued that a reviewing court has no power on direct appeal to order that a defendant be relieved of these requirements when these requirements were not imposed by the trial court. *Bingham*, 2018 IL 122008, ¶ 15.

¶ 14            Our supreme court agreed, explaining that " '[t]he trial court, after all, did not impose these restrictions as part of its sentence. Instead, these laws automatically applied to defendant, no matter the trial court's sentence.' " *Bingham*, 2018 IL 122008, ¶ 20 (quoting *People v. Avila-Briones*, 2015 IL App (1st) 132221, ¶ 32). "Sex offender registration is a matter controlled by statute and was not a requirement imposed by the trial court ***." *Bingham*,

2018 IL 122008, ¶ 1. These statutory requirements were "[a] collateral consequence," a term defined by our supreme court as follows: "A collateral consequence is an effect upon a defendant that the circuit court has no authority to impose, and it results from an action that may or may not be taken by an agency that the trial court does not control." *Bingham*, 2018 IL 122008, ¶ 10, n.1.

¶ 15        Our supreme court observed that permitting an appeal of sex-offender requirements "on direct appeal from a criminal conviction" would open the door to appeals of "a host of other collateral consequences of convictions that are not imposed by trial courts and are not embodied in their judgments," such as "the loss of the right to vote, disqualification from public benefits, ineligibility to possess firearms, dishonorable discharge from the Armed Forces, and loss of business or professional licenses." (Internal quotation marks omitted.) *Bingham*, 2018 IL 122008, ¶ 19.

¶ 16        In addition, we observe that defendant challenges the requirements as applied to him on the ground that he is autistic. However, this is a ground that has not been developed in the record before us, and what little evidence there is in the record does not support defendant's claim. During pretrial proceedings, defendant moved to suppress his statements on the ground that he lacked the capacity to understand and waive his *Miranda* rights due to his autism. See *Miranda v. Arizona*, 384 U.S. 436 (1966). The trial court ordered a psychiatric evaluation regarding defendant's ability to understand *Miranda* warnings. On October 19, 2015, the psychiatrist found that defendant had the ability to understand *Miranda* warnings because "there was neither subjectively reported nor objectively documented indications of the presence of any significant cognitive impairment at the time of his arrest which would have

impaired or impacted his ability to understand these rights."[1] On March 15, 2018, defendant waived his right to a presentence report. Thus, the record before us does not even contain a presentence report for this defendant.[2] On April 13, 2018, defendant moved to reconsider his sentence, "as to one of the conditions of probation," which was to avoid contact with children. Defendant's motion claimed that "[b]ased largely upon the report of Dr. Rachel Loftin, who diagnosed [defendant] with Autism Spectrum Disorder, the State agreed to a probationary sentence." The motion also referenced a report by Dr. Mark Brenziger. However, neither Dr. Lofton's report nor Dr. Brenziger's report is in the record before us. The motion states that their reports are attached but, in the record before us, the attachments are blank and a blank page states "Secured," indicating that their reports should be in the secured record filed in this case. However, the secured record filed in this case contains the presentence report for another defendant and jury-verdict forms for another defendant. Apparently realizing that their reports were not in the record, defendant's counsel moved on October 1, 2018, to supplement the record with their reports. However, this court denied the motion on October 5, 2018, "without prejudice to seeking leave to supplement with a certified record attached as required under the rules." Since our October 5, 2018, order, defendant has not sought leave to file a certified record. Hence, their reports are not in the record, and the only evaluation that is in the record does not support defendant's claim.

¶ 17    We cannot adjudicate an as-applied claim on appeal without the benefit of a fully developed factual record. *Bingham*, 2018 IL 122008, ¶ 22. Our supreme court has "repeatedly held that an as-applied challenge is not properly brought when there has been no evidentiary

---

[1]Defendant later withdrew his suppression motion at the plea hearing.

[2]The presentence report, in the record on appeal filed in this case, is for a different defendant. There is no presentence report for this defendant in the record before us.

hearing and no findings of fact." *Bingham*, 2018 IL 122008, ¶ 22. Not only are relevant reports missing, but there has been no evidentiary hearing and no findings of fact on this issue.

¶ 18    Further, our supreme court observed: "Allowing defendants to challenge the collateral consequences of a conviction on direct appeal would place a reviewing court in the position of ruling on the validity (or resolving the details) of regulatory programs administered by state agencies and officials that are not parties to the action." *Bingham*, 2018 IL 122008, ¶ 19.

¶ 19    Although we must dismiss his appeal, defendant is not without recourse. Our supreme court explained in *Bingham*:

> "The two proper ways that the kinds of constitutional issues involved in this case typically make their way to a reviewing court are (1) through a direct appeal from a case finding a defendant guilty of violating the regulation he attempts to challenge as unconstitutional, such as the sex offender registration law [citation], or (2) by filing a civil suit seeking a declaration of unconstitutionality and relief from the classification as well as the burdens of sex offender registration." *Bingham*, 2018 IL 122008, ¶ 21.

Thus, defendant may file "a civil suit seeking a declaration of unconstitutionality and relief." *Bingham*, 2018 IL 122008, ¶ 21.

¶ 20    As a final note, we observe that, since defendant did not address *Bingham* in his opening appellate brief and did not file a reply brief, there are no counter-arguments in the briefs before us responding to the State's *Bingham* argument. Playing devil's advocate, we realize that one might try to distinguish *Bingham* from the case in front of us on its facts. In *Bingham*, the defendant had a prior conviction for attempted sexual criminal assault from 1983, but he had not been required to register as a sex offender in 1983 because the registration requirement had not yet been enacted. *Bingham*, 2018 IL 122008, ¶ 1. When he was later

convicted in 2014 for the unrelated offense of felony theft, a registration requirement had been enacted in the intervening years, and it provided that " '[a] sex offender or sexual predator, who has never previously been required to register under this Act, has a duty to register if the person has been convicted of any felony offense after July 1, 2011.' " *Bingham*, 2018 IL 122008, ¶ 10 (quoting 730 ILCS 150/3(c)(2.1) (West 2012)). Under this provision, the *Bingham* defendant's theft conviction "trigger[ed] the collateral consequence of his having to register as a sex offender under the Act." *Bingham*, 2018 IL 122008, ¶ 10. We could foresee how a clever advocate could try to distinguish *Bingham* from the case at bar by attempting to argue that the *Bingham* appeal was an appeal from a different case than the one triggering the sex-offender registration requirement.

¶ 21     This argument is not persuasive for the following reasons. First, the case on appeal in *Bingham was* the case triggering the registration requirement. As our supreme court made clear, it was the felony theft conviction that triggered the registration requirement of the statute. *Bingham*, 2018 IL 122008, ¶ 10 (discussing 730 ILCS 150/3(c)(2.1) (West 2012)). Second, the fact that the case on appeal was felony theft, rather than a sex offense, was *not* the reason that our supreme court found the registration requirement to be a collateral consequence. It was because "[s]ex offender registration is a matter controlled by statute" rather than "a requirement imposed by the trial court." *Bingham*, 2018 IL 122008, ¶ 1. As a result, we would not find such an argument persuasive.

¶ 22                                        CONCLUSION

¶ 23     For the foregoing reasons, the appeal is dismissed.

¶ 24     Appeal dismissed.

10

**No. 1-18-0937**

| | |
|---|---|
| **Cite as:** | *People v. Trimble*, 2021 IL App (1st) 180937 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 15-CR-8325; the Hon. Joseph Cataldo, Judge, presiding. |
| **Attorneys for Appellant:** | Matthew J. McQuaid and Thomas More Leinenweber, both of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Douglas P. Harvath, and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People. |